IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Rogelio Montoya, et al., | NO. C 09-00641 JW |
| Plaintiffs,<br>v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| Countrywide Bank, F.S.B., et al., | |
| Defendants. | |

## I. INTRODUCTION

Rogelio Montoya and Alicia Montoya ("Plaintiffs") bring this action against Defendants[1] alleging, *inter alia*, violations of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601, violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, and wrongful foreclosure.

Presently before the Court is Defendants' Motion to Dismiss First Amended Complaint.[2] The Court finds it appropriate to take the motion under submission without oral argument. See Civ.

---

[1] Defendants are Countrywide Bank, FSB ("Countrywide"), Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc. ("Countrywide Home"), Countrywide Home Loans Servicing, L.P. ("Countrywide Servicing"), Bank of America Corporation ("Bank of America"), Mortgage Electronic Registration System, Inc. ("MERS"), and Recontrust Company.

[2] (hereafter, "Motion," Docket Item No. 24.) This Motion is brought by Defendants Countrywide, Countrywide Financial, Countrywide Home, Countrywide Servicing, and Bank of America.

L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

## II.  BACKGROUND

**A.    Factual Background**

In a First Amended Complaint filed on March 25, 2009, Plaintiffs allege as follows:

Plaintiffs are residents of California.[3] Defendant Countrywide is a United States bank doing business in California and is a fully-owned subsidiary of Defendant Countrywide Financial. (FAC ¶¶ 4, 10.) Defendant Countrywide Financial is a Delaware corporation doing business in California. (Id. ¶ 5.) Defendant Countrywide Home is a New York corporation doing business in California. (Id. ¶ 6.) Defendant Countrywide Servicing is a Texas limited partnership doing business in California. (Id. ¶ 7.) Defendant Bank of America is a Delaware corporation doing business in California and the successor in interest to Defendant Countrywide. (Id. ¶ 8.) Defendant MERS is a Delaware corporation doing business in California. (Id. ¶ 9.) Defendant Recontrust is a fully-owned subsidiary of Defendant Countrywide and is acting as trustee. (Id. ¶ 10.)

Plaintiffs purchased 360 East San Antonio Drive, King City, California ("the Property") on April 12, 2007 for $583,000. (FAC ¶¶ 3, 43.) Plaintiffs took two loans from Defendant Countrywide to purchase the Property. (Id. ¶ 44.) The first loan was for $466,308 and was designated as a thirty-year adjustable rate mortgage ("ARM"), with ten years of interest-only payments and an interest rate of 7.375%. (Id. ¶ 45.) The second loan was for $116,577, and was designated as a twenty-five-year ARM, with ten year interest-only fixed rate options, and an interest rate of 8.375%. (Id. ¶ 46.) This loan was subject to a

---

[3] (First Amended Complaint for Violation of Business and Professions Code Section 17200, Violation of Civil Code Section 2923.5, Violation of Real Estate Settlement Procedures Act of 1974, Violation of Truth in Lending Act, Fraud, Breach of Implied Covenant of Good Faith and Fair Dealing, Conversion , Quiet Title, Fraud in the Inducement, Unfair Business Practices, Breach of Fiduciary Duty, Defamation, Violation of Settlement Agreement, Wrongful Foreclosure, Civil Conspiracy, Aiding and Abetting, Unlawful Joint Venture, Injunctive Relief, Rescission of Loan Contracts [and] Other Equitable Relief ¶ 2, hereafter, "FAC," Docket Item No. 19.)

prepayment penalty if full prepayment was made in the first sixty months. (Id.) The penalty would be the amount equal to six months advance interest on the amount of prepayment. (Id.) Plaintiffs are no longer able to pay their mortgage. (Id. ¶ 47.)

Defendants engaged in a conspiracy to influence Plaintiffs to purchase a home they could not afford. (FAC ¶ 16.) They conspired to create a residential lending business model that inflated property values and created risky loans with high interest rates. (Id.) Plaintiffs were convinced of their ability to take on a loan by Defendants' relaxed lending requirements that did not determine whether borrowers could actually repay the loan. (Id. ¶ 19.)

Defendants encouraged borrowers with low credit scores and Plaintiffs to enter into risky loans by, *inter alia*, failing to clearly and conspicuously disclose how much and how soon the interest rate would increase and fraudulently promising that the value of the property would increase and therefore the borrower could easily refinance their property. (FAC ¶¶ 24, 26.) Brokers, pressured by Defendants to increase the sales of risky loans, encouraged borrowers to encumber their homes up to 100% or more of the assessed value. (Id. ¶ 31.)

On January 1, 2009, the Monterey County Assessor assessed the Property at $450,000, which is less than the amount Plaintiffs still owe on their loans. (FAC ¶ 48.) On September 3, 2008, a Notice of Default and Election to Sell was recorded on the Property by Defendants. (Id. ¶ 49.) On January 16, 2009, a Notice of Trustee's Sale was recorded on the Property by Defendants. (Id. ¶ 50.)

On the basis of the allegations outlined above, Plaintiffs allege nineteen causes of action as follows: (1) Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) Violation of Cal. Civ. Code § 2923.5; (3) Violation of RESPA, 12 U.S.C. §§ 2601, *et seq.*; (4) Violation of TILA, 15 U.S.C. §§ 1601, *et seq.*; (5) Fraud; (6) Breach of the Implied Covenant of Good Faith and Fair Dealing; (7) Conversion; (8) Quiet Title; (9) Fraud in the Inducement; (10) Unfair Business Practices; (11) Breach of Fiduciary Duty; (12) Defamation; (13) Violation of Countrywide's Settlement Agreement

3

1  with the California Attorney General; (14) Wrongful Foreclosure; (15) Civil Conspiracy; (16)
2  Aiding and Abetting; (17) Unlawful Joint Venture; (18) Injunctive Relief; (19) Rescission of Loan
3  Contracts.  (FAC at 17-36.)

## B. Procedural History

On January 30, 2009, Plaintiffs filed this suit in Monterey County Superior Court.  (See Docket Item No. 1.)  On February 9, 2009, Defendants removed the action to federal court under 28 U.S.C. § 1446(b).  (See id.)  On March 25, 2009, Plaintiffs filed an Amended Complaint.  (See Docket Item No. 19.)

Presently before the Court is Defendants' Motion to Dismiss.

## III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533- 34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

4

## IV.  DISCUSSION

Defendants Bank of America and Countrywide Financial move to dismiss on the grounds that they are not liable as parent corporations to other Defendants.  Defendants also move to dismiss each of Plaintiffs' causes of action on various grounds.  The Court considers each issue in turn.

**A.     Dismissal as to Defendants Bank of America and Countrywide Financial**

Defendants move to dismiss all claims against Bank of America and Countrywide Financial on the ground that there are no allegations concerning their conduct and that there are no allegations that they should have liability as a parent corporation.  (Motion at 10-12.)

Generally, a parent corporation and its subsidiary will be treated as separate legal entities. Current Inc. v. State Board of Equalization, 24 Cal. App. 4th 382, 391 (1994);  Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 741 (1998).  The alter ego doctrine is one exception to the rule where a parent corporation will be found liable for the actions of its subsidiary when there is (1) such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that if the acts are treated as those of the corporation alone, an inequitable result will follow.  Automotriz Del Golfo De California v. Resnick, 47 Cal. 2d 792, 796 (1957); United States v. Healthwin-Midtown Convalescent, 511 F. Supp. 416, 418 (1981) *aff'd*, 685 F.2d 448 (9th Cir. 1982).  Another exception to the general rule is when the subsidiary is an agent of a parent corporation, which requires a showing that the parent controls the subsidiary to the extent that the subsidiary becomes merely and instrument of the parent.  Laird, 68 Cal. App. 4th at 741.  A parent corporation contributing funds to a subsidiary is not enough to find alter ego or agency liability.  Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 539, 541 (2000).

Here, Plaintiffs' Complaint does not allege any independent facts as to Bank of America or Countrywide Financials' conduct outside of listing them as "Defendants."  Plaintiffs do not allege that these Defendants are linked to Defendant Countrywide, other than to generally conclude that all Defendants are part of a conspiracy.  Thus, the Court finds that the First Amended Complaint does not state a claim against Defendants Countrywide Financial and Bank of America.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss all claims against Defendants Countrywide Financial and Bank of America with leave to amend.

**B.    TILA**

Defendants move to dismiss Plaintiffs' Fourth Cause of Action for violation of TILA on the grounds that Plaintiffs' TILA claim is barred by the statute of limitations, and Plaintiffs have failed to tender repayment of the loan to Defendants. (Motion at 14-15.)

Under TILA, a borrower has two remedies for loan disclosure violations. TILA gives a borrower the right to rescind any credit transaction in which a security interest is created in the borrower's home. 15 U.S.C. § 1635. TILA also gives a borrower a right to civil damages. 15 U.S.C. § 1640. A claim for rescission must be brought within three years "after the date of consummation of the transaction or upon sale of the property, whichever occurs first," while a claim for damages must be brought within one year "from the date of the occurrence of the violation." 15 U.S.C. §§ 1635(f), 1640(e).

For a rescission claim, TILA establishes the following framework:

> Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C. § 1635(b); see also 12 C.F.R. § 226.23(d). However, the Ninth Circuit has held that TILA's framework gives a trial court discretion to condition rescission on a tender by the borrower of the property, or the property's reasonable value, to the lender. Yamamoto v. Bank of New York, 329 F.3d 1167, 1171 (9th Cir. 2003).

6

Here, Plaintiffs' loan was consummated on April 12, 2007. (FAC ¶ 43.) Since Plaintiffs did not file this action prior to January 20, 2009, they cannot seek damages under § 1640 of TILA.[4] With respect to Plaintiffs' claim for rescission, the Complaint alleges, in relevant part, as follows:

> Defendant Countrywide . . . has violated the Truth in Lending Act by engaging in prohibited acts as set forth in this complaint, including . . .
>
> a.  Defendant Countrywide failed to examine Plaintiffs Montoya's current and expected repayment ability;
>
> b.  Defendant Countrywide failed to clearly and conspicuously disclose to Plaintiffs key provisions of Plaintiffs' mortgage, including but not limited to, such details as the eventually reset interest rate, specific loan terms, and the total dollar amount the mortgage will cost over time.

(FAC ¶ 65.) Notably absent from Plaintiffs' Complaint is any allegation that they attempted to tender, or are capable of tendering, the value of the property pursuant to the rescission framework established by TILA. Nor do Plaintiffs allege that such equitable circumstances exist that conditioning rescission on any tender would be inappropriate. Thus, the Court finds that Plaintiffs have failed to adequately allege that they are entitled to rescission under TILA.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fourth Cause of Action for violations of TILA with leave to amend.

**C.     RESPA**

Defendants move to dismiss Plaintiffs' Third Cause of Action for RESPA violation on the ground that there is no private right of action under the RESPA provision which Plaintiffs allege Defendants have violated. (Motion at 14.)

RESPA prohibits the giving or receiving of referral fees or kickbacks as part of a real estate settlement service; however, fees paid for services actually performed in the making of a loan are permissible. 12 U.S.C. §§ 2607(a), (c)(2). The Ninth Circuit has adopted the two-part test

---

[4] Plaintiffs contend that the statute of limitations should be equitably tolled. (Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, Strike Allegations and For a More Definite Statement at 16, hereafter, "Opposition," Docket Item No. 43.) However, Plaintiffs' allegation as to tolling is conclusory and unsupported.

7

articulated by the Department of Housing and Urban Development ("HUD") for determining whether payments from a lender to a mortgage broker are permissible under RESPA.[5] Schuetz v. Banc One Mortg. Corp., 292 F.3d 1004, 1005-06 (9th Cir. 2002); Bjustrom v. Trust One Mortgage Corp., 322 F.3d 1201 (9th Cir. 2003). First, the payment must be for goods actually furnished or services actually performed. Schuetz, 292 F.3d at 1005. Second, the payment must be reasonably related to the value of the goods actually furnished or services actually performed. Id. Under the first prong, HUD considers payments to a mortgage broker justified if the broker takes the application information and performs at least five additional items specified in HUD's list of compensable services.[6] Under the second prong, direct and indirect fees, including yield-spread premiums,[7] are permissible if the total compensation provided to the mortgage broker is reasonable. Schuetz, 292 F.3d at 1005; Bjustrom, 322 F.3d at 1208.

With respect to their RESPA claim, Plaintiffs allege as follows:

> Defendant Countrywide, in furtherance of their conspiracy with all defendants, and each of them, has violated RESPA by engaging in prohibited acts as set forth in this complaint, including . . .

---

[5] The Secretary of Housing and Urban Development is authorized to prescribe rules and regulations and make interpretations of RESPA. 12 U.S.C. § 2617(a).

[6] HUD Policy Statement 1999-1: Real Estate Settlement Procedures Act Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080, 10085 (March 1, 1999)). The list includes: (a) taking information from the borrower and filling out the application; (b) analyzing the borrower's income and debt and pre-qualifying him to determine the maximum mortgage that he can afford; (c) educating the borrower in the home buying and financing processes, advising him about the different types of loan products available, and demonstrating how closing costs and monthly payments could vary under each product; (d) collecting financial information such as tax returns, bank statements, and other related documents that are part of the application process; (e) initiating/ordering verifications of employment and verifications of deposit; (f) initiating/ordering requests for mortgage and other loan verifications; (g) initiating/ordering appraisals; (h) initiating/ordering inspections or engineering reports; (i) providing disclosures (truth in lending, good faith estimate, others) to the borrower; (j) assisting the borrower in understanding and clearing credit problems; (k) maintaining regular contact with the borrower, realtors, and lender between application and closing; (l) ordering legal documents; and (n) participating in the loan closing. Id.

[7] A yield-spread premium is a cash rebate paid to a mortgage broker based on selling an interest rate above the wholesale par rate for which the borrower qualifies, i.e., the broker receives compensation for getting the borrower to accept a higher interest rate than the borrower would otherwise be entitled to. Bjustrom, 322 F.3d at 1204 n.2.

8

      a.    Statements regarding the terms and payment obligations, including statements of the duration of the original payment, duration and amount of the interest rate;

      b.    Statements regarding [Plaintiffs'] prepayment penalty, including that the loan had no prepayment penalty or that the prepayment penalty could be easily waved [sic] by making payments of kickbacks, fees or other 'things of value.'

(FAC ¶ 62.) These allegations do not allege any violations of RESPA.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Third Cause of Action for violations of RESPA with leave to amend.

**D.** **Actions Sounding in Fraud**

Defendants move to dismiss Plaintiffs' causes of action sounding in fraud on the ground that they are not alleged with sufficient particularity. (Motion at 7.)

Fed. R. Civ. P. Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Allegations under Rule 9(b) must be stated with "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). The pleading must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

Finally, a plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1546 (9th Cir. 1994) (*en banc*). The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud" because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn." Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997) (quoting GlenFed, 42 F.3d at 1546). This heightened pleading standards applies to

9

allegations of fraud and allegations that sound in fraud, including false misrepresentations. Vess, 317 F.3d at 1106-07; see also Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

In this case, Plaintiffs have alleged three causes of action sounding in fraud: Violations of California Business and Professions Code § 17200,[8] Fraud, and Fraud in the Inducement. Plaintiffs allege as follows:[9]

> Defendant Countrywide was part of a conspiracy with the other Defendants . . . through Plaintiffs' broker, to induce homeowners, including Plaintiffs Montoya, to accept Defendant Countrywide's risky loan products by . . . making false promises that Defendant Countrywide could refinance the loan prior to a rate increase and would waive the prepayment penalty costs; . . . fraudulently promising that the value of the property would increase and therefore the borrower could easily refinance their property even if they took a loan out at a 100% loan-to-value ratio . . . .
>
> [Defendants'] untrue and misleading statements include, but are not necessarily limited to:
>
> a. Statements that Defendants will assign a negotiator to the file to review and reasonably consider the purchase offer submitted on a short sale transaction and revise the loan payoff account in order to close a short sale;
>
> b. Statements that Defendants were mortgage loan experts that could be trusted to help Plaintiffs close his short sale and avoid foreclosure in a manner and for an amount that are consistent with market conditions . . . ;
>
> e. Statements that the home value would continue to rise and that Plaintiffs could refinance quickly.

(FAC ¶¶ 26, 53.) Although Plaintiffs' allegations characterize Defendants' alleged conduct as fraudulent, they fail to allege time and place of the alleged misrepresentations with the particularity required under Rule 9(b). Moreover, Plaintiffs do not specifically allege who made the alleged

---

[8] A plaintiff alleging violations of Section 17200 must state with reasonable particularity the facts supporting the statutory elements of the violation. Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993).

[9] The Complaint contains numerous and repetitive allegations regarding Defendants' alleged fraud. The Court has considered the entire Complaint, and recites only certain illustrative allegations.

misrepresentations. Thus, the Court finds that Plaintiffs have failed to plead their causes of action sounding in fraud with particularity.

Accordingly, the Court GRANTS Defendants' Motion to dismiss Plaintiffs' First, Fifth, and Ninth Causes of Action with leave to amend.

**E.     California Civil Code Section 2923.5**

Defendants move to dismiss Plaintiffs' Second Cause of Action for a violation of California Civil Code Section § 2923.5 on the ground that Plaintiffs do not provide sufficient factual allegations. (Motion at 13.)

Section 2923.5 was enacted September 6, 2008. Cal. Civ. Code § 2923.5. It is not expressly retroactive, and California Civil Code provisions are not retroactive unless so declared. Cal. Civ. Code §§ 3, 2923.5.[10]

Here, Plaintiffs allege that Defendants violated Section 2923.5 by failing to file the required declaration prior to filing a Notice of Default. (FAC ¶¶ 55-60.) According to the allegations of the Complaint, the Notice of Default was recorded on September 3, 2008, prior to the enactment of Section 2923.5. (FAC ¶ 49.) Since § 2923 is not retroactive, the Court finds its provisions inapplicable.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action for violation of California Civil Code Section § 2923.5 with prejudice.

---

[10] Section 2923.5 provides that

> If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration.

§ 2923.5(c). However, Plaintiffs do not allege any deficiency in the notice of sale.

11

**F.     Breach of Implied Covenant**

Defendants move to dismiss Plaintiffs' Sixth Cause of Action for breach of implied covenant of good faith and fair dealing on the ground that Plaintiffs alleged misconduct only during negotiations for their loan. (Motion at 15.)

The covenant of good faith exists to protect the express covenants or promises of a contract. Racine & Laramie v. Dep't of Parks & Rec., 11 Cal. App. 4th 1026, 1032 (1992). There is no obligation to deal fairly or in good faith absent an existing contract. Id. "[T]he commencement of negotiation activities looking to the final achievement of a contractual agreement imposes no obligation of good faith or fair dealing unless there is an underlying agreement of some sort which provides the contractual commitment to use best efforts." Id. at 1033.

Here, Plaintiffs allege as follows:

> [D]uring the negotiations [of Plaintiffs' residential mortgage loans], Defendant Countrywide, as a part of a conspiracy with all Defendants, negotiated for terms, such as a prepayment clause, with the promise that the clause would be waived in the future at the time of the refinance. These terms were designed to give Defendants an unfair advantage over Plaintiffs and therefore further induce the Plaintiffs to refinance the [residential mortgage loans] in the future or be unable to make payments and stay in the home. By agreeing to these conditions and then not enforcing them in good faith, Defendants have breached this covenant.

(FAC ¶ 75.) According to Plaintiffs' allegations, Defendants' misconduct occurred at the time Plaintiffs' loan was negotiated. Plaintiffs' claim is premised on promises made prior to entering into a contract with Defendants that were inconsistent with the contract, and then failing to enforce the extra-contractual promises in good faith. Such allegations do not state a claim for breach of the covenant of good faith and fair dealing.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Sixth Cause of Action for breach of implied covenant of good faith and fair dealing with leave to amend.

**G.     Conversion**

Defendants move to dismiss Plaintiffs' Seventh Cause of Action for conversion on the ground that Plaintiffs fail to identify the sum of money in question. (Motion at 16.)

12

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein," which includes assuming "control or ownership over the property," or applying the property to one's own use. Messerall v. Fulwider, 199 Cal. App. 3d 1324, 1329 (1988) (citing Igauye v. Howard, 114 Cal. App. 2d 122, 126 (1952)). The basic elements of a conversion claim are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages. Fremont Indemnity Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 119 (2007) (citing Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (1998)). Legal title to property is not necessary for an action for damages in conversion; a plaintiff must only show that she was "entitled to immediate possession at the time of conversion." Messerall v. Fulwider, 199 Cal. App. 3d 1324, 1329 (1988) (citing Bastanchury v. Times-Mirror Co. 68 Cal. App. 2d 217, 236 (1945)).

In this case, Plaintiffs allege as follows:

> Defendants . . . entered a conspiracy to induce the Plaintiffs to agree to the [residential mortgage loan] through fraud, deceit, and unfair business practices . . . Defendant Countrywide, at the direction of all Defendants as a part of this conspiracy, set an unjustly high monthly payment by artificially inflating the value of the property to fraudulently justify a larger mortgage.
>
> By raising the monthly payment rate, Defendants extracted from the Plaintiffs Montoya [sic] a higher amount than the Plaintiffs legitimately should have paid. . . .
>
> [A]s required by Defendant Countrywide's own policies, any payments made in excess of the amount owed should [have been] applied directly to the principle of the account. Defendant Countrywide violated the RML contract and their own policies by applying the extra payments to interest that was not legitimately owned by the Plaintiff. The Defendants as part of their conspiracy, improperly converted said funds of Plaintiffs Montoya for their own use and benefit.

(FAC ¶¶ 78-79.) Plaintiffs' conversion allegations fail to allege facts that make it plausible that Defendants exercised dominion over Plaintiffs' personal property in manner that was inconsistent with Plaintiffs' rights at the time. Plaintiffs' claim is premised on a fraudulently obtained loan by Defendants. However, as discussed above, Plaintiffs have not adequately alleged any causes of action sounding in fraud. Further, the allegations of the Complaint make it clear that Plaintiffs

13

1  entered into multiple loans that required interest-only payments to Defendants for the first 10 years.
2  (Id. ¶¶ 45-46.) Based on these allegations, Defendants' acceptance of Plaintiffs' monthly payments
3  could not plausibly be deemed wrongful. Thus, the Court finds Plaintiffs have not adequately
4  alleged a claim for conversion.

5  Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Seventh Cause
6  of Action for conversion with leave to amend.

### H. Breach of Fiduciary Duty

Defendants move to dismiss Plaintiffs' Eleventh Cause of Action for breach of fiduciary duty on the ground that, as lenders, they did not owe Plaintiffs a fiduciary duty. (Motion at 17.) Plaintiffs contend that Defendants' fiduciary duty arises out of their conspiracy with Plaintiffs' mortgage broker. (Opposition at 20.)

The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) resulting damage. City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App. 4th 445, 483 (1998). The relationship between a lending institution and its borrower-client is not fiduciary in nature. Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1095 (1991). "A commercial lender is entitled to pursue its own economic interests in a loan transaction." Id. However, a lender may owe a fiduciary duty when its conduct exceeds "the scope of its conventional role as a mere lender of money." Nymark, 231 Cal. App. 3d at 1096.

Here, Plaintiffs allege as follows:

> Defendants . . . conspired to direct Plaintiffs' mortgage broker, who has a fiduciary duty to Plaintiffs Montoya, to breach this duty through the wrongful behavior detailed in this complaint. Since Defendants were all involved in a conspiracy to breach the broker's fiduciary duty to Plaintiffs, Defendants, and each of them, are liable for this breach. . . .

> Defendants . . . conspired with Plaintiffs' mortgage broker to fraudulently entice Plaintiffs to accept risky [residential mortgage loans] when there were better options [and to] . . . inflate the value of Plaintiffs' residence through a variety of means and [sic] therefore increasing the amount of the loan and the amount that the Plaintiffs would be obligated to pay. . . .

14

> Defendant Countrywide conspired with the other Defendants, and each of them, and Plaintiffs' mortgage broker to create a policy of pushing high risk [adjustable rate mortgages] "ARMs" that [were], in the long run, against Plaintiffs' best interest. . . .
>
> Defendant Countrywide conspired with Plaintiffs' mortgage broker to inflate the property value of Plaintiffs' residence through a variety of means . . . increasing the amount of the loan and the amount that Plaintiffs would be obligated to pay. . . .

(FAC ¶¶ 100, 102.) While Plaintiffs allege that Defendants conspired with Plaintiffs' mortgage broker, the Complaint is lacking any factual allegations concerning that conspiracy. Although a mortgage broker may have owed Plaintiffs a fiduciary duty, Plaintiffs cannot impute that duty to all Defendants absent factual allegations giving rise to a plausible inference that Defendants went beyond their usual role as a lender. Thus, the Court finds Plaintiffs have not sufficiently alleged the existence of a fiduciary duty.

Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Eleventh Cause of Action for breach of fiduciary duty with leave to amend.

## I.     **Defamation**

Defendants move to dismiss Plaintiffs' defamation claim on the ground that reporting a true statement to a credit agency is not defamation. (Motion at 18.)

Defamation is "the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." Ringler Assocs. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1179 (2000). A credit report, even one that causes harm, is not defamatory if it is true. Francis v. Dun & Broadstreet, Inc., 3 Cal. App. 4th 535, 540 (1992). A plaintiff's admission of truth will bar a claim for defamation. Hejmadi v. Amfac, Inc., 202 Cal. App. 3d 525, 553 (1988).

Here, Plaintiffs allege that they "are no longer able to make the required payments" on their loans. (FAC ¶ 47.) Plaintiffs also allege that:

> [i]n an attempt to coerce payments out of the Plaintiffs in regards to the fraudulently obtained [residential mortgage loans], the Defendant Countrywide threatened and actually reported to credit agencies and other third parties that Plaintiffs were in default on the [residential mortgage loan] for a payment that was incorrectly assessed. . . .

15

> Defendants . . . conspired to make these statements with full knowledge of Defendants' wrongful and fraudulent conduct and the Defendants were full [sic] aware that the [residential mortgage loan] was obtained illicitly.

(Id. ¶ 106-07.) Based on the allegations, Plaintiffs' defamation claim is premised on Defendants' statements to credit agencies that Plaintiffs were in default on their loan despite knowing the loan was obtained illicitly. However, as the Complaint also alleges, Plaintiffs were unable to pay their mortgage, and therefore, regardless of how the loan was obtained, Defendants' reports to credit agencies, as alleged, are true. Thus, the Court finds Plaintiffs have failed to allege the publication of a false statement.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Twelfth Cause of Action for defamation with prejudice.

## J. **Breach of the Settlement Agreement**

Defendants move to dismiss Plaintiffs' Thirteenth Cause of Action for breach of a settlement agreement between Defendant Countrywide and the Attorney General, acting on behalf of the People of California, on the ground that Plaintiffs do not have standing to enforce the October 20, 2008 stipulated settlement. (Motion at 18.)

Any intended beneficiary of a contract has the right to enforce the obligor's duty of performance. County of Santa Clara v. Astra USA, Inc., 540 F.3d 1094, 1101 (9th Cir. 2008).

On October 20, 2008, Countrywide entered into a stipulated settlement agreement with the People of the State of California regarding Countrywide's lending practices.[11] (FAC ¶¶ 111-12.) Plaintiffs allege that "Defendant Countrywide breached this agreement." (FAC ¶ 113.) Section 6.8.1 of the stipulated judgment provides:

> 6.8.1 *No Third Party Beneficiaries Intended*. Section 6 of this Stipulated Judgment [sic] and Injunction is not intended to confer upon any person any rights or remedies,

---

[11] (California v. Countrywide Financial Corporation, No. LC083076, Slip Op., 14 (Cal. Sup. Ct., L.A. County, N.W. District, Oct. 20, 2008) (online at ag.ca.gov/cms_attachments/press/pdfs/n1618_cw_judgment.pdf), hereafter "Settlement Agreement.") Although Plaintiffs' Complaint purports to attach the Settlement Agreement, no such document was attached. (FAC ¶ 111.)

16

1  including rights as a third party beneficiary.  Section 6 of this Stipulated Judgement
   and Injunction is not intended to create a private right of action on the part of any
2  person or entity other than the parties hereto.

3 (Settlement Agreement § 6.8.1.)  The language of the settlement agreement explicitly disclaims any

4 private cause of action.  Thus, the Court finds Plaintiffs do not have standing to bring an action for

5 breach of the settlement agreement.

6       Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Thirteenth

7 Cause of Action for violating the October 20, 2008 settlement agreement with prejudice.

**K.    Quiet Title, Wrongful Foreclosure**

9       Defendants move to dismiss Plaintiffs' Eighth and Fourteenth Claims for Wrongful

10 Foreclosure and Quiet Title respectively, on the ground that Plaintiffs have failed to allege tender of

11 the loan amount.  (Motion at 12.)

12       Under California law, the "tender rule" requires that as a precondition to challenging a

13 foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a

14 valid and viable tender of payment of the secured debt.  Karlsen v. American Savings and Loan

15 Ass'n, 15 Cal. App. 3d 112, 117 (1971); Arnolds Management Corp. v. Eischen, 158 Cal. App. 3d

16 575, 578 (1984).  A quiet title action requires that a plaintiff allege tender or offer of tender of the

17 amounts admittedly borrowed.  Connors v. Home Loan Corp., No. 08cv1134, 2009 WL 1615989, at

18 *7 (S.D. Cal. Jun. 9, 2009) (citing Eischen,158 Cal. App. 3d at 578).  However, tender is not

19 required when it would be inequitable.  Humboldt Sav. Bank v. McCleverty, 161 Cal. 285, 291

20 (1911).

21       Here, Plaintiffs allege as follows:

22 Defendants . . . have also conspired to engage in unfair or deceptive practices in
   servicing the loans they made, including . . . failing to accurately credit homeowners'
23 payments to their accounts.

24 Due to Defendants' conspiracy to impose undue influence, Defendant Countrywide
   received a deed of trust to the Subject Property for a loan that Plaintiffs Montoya [sic]
25 should not have given or been allowed to take.

26 Defendants had no right to foreclose at the time foreclosure proceedings were
   commenced.  The [residential mortgage loan] was obtained by Defendants as a result
27

28       17

>of fraud, material misrepresentations and numerous false statements made by Defendants, its employees and agents in the loan origination process. Due to the fraud and other wrongful acts by the Defendants, there was no valid [loan] on the property and therefore, no possibility of default to give rise to a foreclosure by the Defendants.

(FAC ¶¶ 28, 87, 118.) Plaintiffs' Complaint does not allege that Plaintiffs have attempted to tender the loan amount, have the ability to do so, or allege facts showing that such equitable circumstances exist such that tender should not be required. Thus, Plaintiffs have failed to adequately allege their causes of action for wrongful foreclosure and to quiet title.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Eighth and Fourteenth Causes of Action for wrongful foreclosure and quiet title with leave to amend.

**L.    Civil Conspiracy, Aiding and Abetting, Joint Venture, and Injunctive Relief**

Defendants move to dismiss Plaintiffs' Fifteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action for civil conspiracy, aiding and abetting, unlawful joint venture, and injunctive relief respectively on the grounds that Plaintiffs do not allege independent causes of action. (Motion at 21.)

Civil conspiracy, aiding and abetting, unlawful joint venture and injunctive relief are not independent claims. See Rusheen v. Cohen, 37 Cal. 4th 1048, 1062 (2006); In re Ryan, No. 05-32933, 2008 WL 4829947, at *3 (Bankr. N.D. Cal. Oct. 29, 2008); Dixon v. City of Livermore, 127 Cal. App. 4th 32, 42 (2005); Cox Communications PCS, L.P. v. City of San Marcos, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002).

Although Plaintiffs have pleaded each of these claims as separate causes of action, it is clear from Plaintiffs' Complaint that they are merely attempts to establish secondarily liability for the relief sought under Plaintiffs' independent causes of action, which are duplicative.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fifteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action for civil conspiracy, aiding and abetting, unlawful joint venture, and injunctive relief with prejudice.

## V.  CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss.  Since the Court finds that Plaintiffs may be able to cure the deficiencies of their Complaint, the Court GRANTS Plaintiffs leave to amend as to all causes of action except Plaintiffs' Second, Twelfth Thirteenth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action which have been dismissed with prejudice.

On or before **July 16, 2009**, Plaintiffs shall file their Amended Complaint consistent with the directions of this Order.  Failure to timely amend or amend pursuant to the terms of this Order may result in sanctions, including, dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

Dated: June 25, 2009

JAMES WARE
United States District Judge

**United States District Court**
For the Northern District of California

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew Weiss Noble awn@severson.com
Jon David Ives jdi@severson.com
Lawrence Pedro Ramirez lpramirez@thellg.com
Mark Joseph Kenney mjk@severson.com

**Dated: June 25, 2009**                    **Richard W. Wieking, Clerk**

                                            **By:  /s/ JW Chambers**
                                              **Elizabeth Garcia**
                                              **Courtroom Deputy**